## HANNAH E. RAND *vs.* STUART O. SYMONDS.

Cumberland County.   Decided April 3, 1923.   For the third time this case appears before this court.   In the first trial, April, 1921, a jury verdict was rendered for the plaintiff and the case came to us upon defendant's exceptions and motion for a new trial.   Upon a consideration of the motion, *Rand* v. *Symonds*, 120 Maine, 126, we carefully examined all the testimony offered, relating to the titles of the parties, and declared; "A comparison of these two record titles discloses on the one hand in the plaintiff's chain an unfilled gap of one hundred sixteen years followed by a mere quit-claim deed to herself from those who show no record title, while on the other hand the defendant shows record title beginning with a warranty deed dated twenty-three years earlier than the plaintiff's quit-claim and with an unbroken chain to the present time.   Moreover, the plaintiff's early deeds are vague and uncertain in description while those of the defendant quite clearly and quite exactly give boundaries which include the land in dispute.   It is, therefore, the opinion of the court that the defendant has the better title, that the jury must have failed to understand the rules of law pertaining to the case and the application of the evidence to those rules of law, with the result that their verdict was manifestly wrong."   Accordingly a new trial was granted.

At the second trial, possibly because of the finding of this court upon the question of record title, the presiding Justice withdrew that question from jury consideration and submitted the case upon the one issue of adverse possession.   Again the verdict was for the plaintiff and again the defendant came to us upon exceptions and motion for a new trial.   The exceptions were not considered but the motion for a new trial was sustained, the court saying, among other things, that the plaintiff based her claim to adverse possession upon cutting timber and wood in small quantities in 1905, 1909 and 1918, and occasional cutting of firewood and marsh grass for bedding.   These cuttings were upon land which she says was intended to be described in a deed to her from the Pillsbury heirs dated April 18, 1864.   This is the quitclaim deed which was referred to in the first opinion as coming after a gap in the title of one hundred sixteen years.   The court in the second opinion further said that this quitclaim deed of

1864 gives no sufficient description of the land but refers to a deed given one hundred and sixteen years earlier which was even more deficient in description. "From the various surveys, and the testimony of surveyors and others appearing at both trials," said the court, "a true location of the Pillsbury lot, or a Pillsbury lot, is an impossibility." Since the evidence utterly failed to locate such a lot as the plaintiff described in her declaration the court held in the second opinion that the verdict was clearly wrong, saying "If the Pillsbury lot cannot be located, what lot from the testimony did the jury have in mind when returning the verdict? The testimony does not disclose its proportions or extent, the writ gives no aid and a judgment based on the verdict would be meaningless."

For the third and last time the case is before us and this time it is upon report. In that report the parties stipulate as follows: "The evidence taken out at the trial held at the April term, 1921, both documentary and oral, as appearing in the printed case presented to the Law Court at the June term, 1921, shall be considered in the case with the same force and effect as if it had been taken out anew at this time. In addition to that the parties may take out any new testimony, either contradictory or supplementary to the testimony found in said printed case. Such new testimony, together with the printed case of June, 1921, to constitute the record of the case before the Law Court. Upon all this testimony, if the Law Court shall find that a verdict by a jury in favor of the plaintiff would be warranted and could be sustained, then the Law Court shall order judgment for the plaintiff. If on the other hand the Law Court finds that upon all such testimony a verdict for the plaintiff would not be warranted and could not be sustained then in such case the Law Court shall order judgment for the defendant."

By force of this stipulation both the questions of record title and prescriptive title are before us for consideration.

We have, therefore, carefully examined the testimony, both old and new, and as to record title we hold that a plaintiff's verdict could not be sustained.

In the new testimony no effort has been spared by the plaintiff to convince this court as to the location of the Pillsbury lot and the failure of the defendant's deed of 1841 to include the land in dispute. But when all the evidence has been considered, and it would be of no interest except to the parties to enter into an extended discussion of

the same, a majority of the court hold that the plaintiff has failed to persuade us by a fair preponderance of the evidence that the title, claimed by adverse possession, to the land described in her declaration, is superior to that of the defendant. Judgment for the defendant. *W. R. & E. S. Anthoine,* for plaintiff. *Frank H. Purinton,* for defendant.